FILED

2019 SEP 17  PM 3: 56

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**Nancy Grant**

    Plaintiff

    v.

**CIVIL ACTON**

Case No.: 2:19-CV-682-FtM-38NPM

   Paul Seusy;
   Ashley Schlick;
   Benjamin W. Hardin Jr.;
   Charlotte L. Allen;
   Contractor Services 1, L.L.C.;
   Daniel A. Fox;
   David Carlton
   Ditech Holding Corporation
   Don T. Hall;
   Erika Quartermaine;
   James F. Potter;
   James S. Parker;
   Kenneth Hancock;
   Kim Wilson Cheraz;
   Kimberly Carlton Bonner;
   Lee E. Haworth;
   Lon Arend;
   Mark F. Negley;
   Michael Ruff;

Michael Savage;
Richard D. Conflitti;
Robert B. Bennett;
Rodney Shields;
Ronnie Dean Allen;
Sherry Straub-Guess;
Stephen M. Walker;
Susan German Wright;
Vernon L. Keen;
Vince Sica;

Defendants.

_____/

## R.I.C.O. COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Nancy Grant chargers that a corrupt small town government in Arcadia, DeSoto County Florida has in essence, been transformed into a racketeer influenced and corrupt organized crime-enterprise, has turned criminal cases into a forum for theft of property and business interest, and that this corruption has further generated void judgments, civil and criminal.

PAGE 2

1. Plaintiff, Nancy Grant (hereinafter "Grant") files this RICO Complaint (pursuant to 18 U.S. Code Chapter 96) and Demand for Jury Trial, bringing this action against Defendants, Paul B. Seusy(hereinafter "Seusy") Ashley Schlick (hereinafter "Schlick"); Benjamin W. Hardin, Jr. (hereafter "Hardin"); Charlotte L. Allen (hereinafter "C. Allen"); Contractor Services 1, LLC (hereinafter "CS1"); Daniel A. Fox (hereafter "Fox"); David Carlton (hereinafter "Carlton"); Ditech Holding Corporation (hereinafter "DHC") Don T. Hall (hereinafter "Hall"); Ed Brodsky hereinafter ""Brodsky"); Erika Quartermaine (hereinafter "Quartermaine"); James F. Potter ( hereinafter "Potter"); James S. Parker (hereinafter "Parker"); Kenneth Hancock (hereinafter "Hancock");   Kim Wilson (hereinafter "Wilson") Kimberly Carlton Bonner (hereinafter "Bonner"); Lee E. Haworth (hereinafter "Haworth"); Lon Arend (hereinafter "Arend"); Mark Negley (hereinafter "Negley"); Michael Ruff (hereinafter  "Ruff"); Michael Savage (hereinafter "Savage"); Richard D. Conflitti

PAGE 3

(hereinafter "Conflitti");  Robert B. Bennett (hereinafter "Bennett"); Rodney Shields (hereinafter "Shields"); Ronnie D. Allen (hereinafter "R. Allen"); Sherry Straub-Guess (hereinafter "Guess"); Stephen M. Walker (hereinafter "Walker"); Susan German Wright (hereinafter "Wright"); Vernon L. Keen (hereinafter "Keen"); Vince Sica (hereinafter "Sica");

## I    SUMMARY OF CLAIMS

1.This is a civil RICO claim which requires Plaintiff to demonstrate the Defendants engaged in a "pattern" of misconduct (called "racketeering" under the RICO statutes). "Pattern of racketeering activity" requires at least two acts of racketeering activity committed within ten years of each other.

2..The civil action for RICO is defined in 18 U.S.C.A § 1964 (c): "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may......recover threefold the damages he sustains and the cost

of the suit, including a reason attorney's fee....." Section 1962 has four subparts and generally prohibits the use of income obtained from a pattern of racketeering activity or through collection of an unlawful debt to purchase, establish, operate, or participate in the affairs of any enterprise in interstate or foreign commerce.

3. Plaintiff will demonstrate the repercussions starting with one illegal act, having never been corrected then over time others decide to contradict; or Simply not following the edicts required of those working as officers of the courts. When private citizens work with these individuals and are allowed to participate with these officers of the courts having full cooperation with a sheriff's department to retaliate, intimidate, incarcerate, extort and defame in order to ensure absolute, vindictive power and ensure a reign of terror produced from within the 12th circuit court in DeSoto County.

4. These behavioral patterns of abuse by top officials, officers of the courts and top ranking law enforcement officers, and cooperative private citizens

working with them are so commonplace and rampant that they are considered standard operating procedure presently and in the foreseeable future unless exposed. The means to create change can only be brought about by seeing that governmental agencies act equitably, justly and according to the laws of the State. Thus far the protection for individuals living in communities has been irretrievably broken by the actions of the Defendants.

5. The Defendants have by and through the courts, sheriffs department and cooperating private citizens engaged in "racketeering activity" through: (A) Acts of threats, bribery and extortion which is chargeable under State law and punishable by imprisonment for more than one year, and(B) Bribery-Sections 201 and Sections 664, Mail fraud –section 1341, Obstruction of Justice Section 1503, Obstruction of Criminal Investigations-Section 1510, Obstruction of State or Local Law Enforcement-Section 1511, Tampering with a Witness, Victim, or an Informant-Section 1512, Retaliation Against a

PAGE 6

Witness, Victim, or an Informant-Section 1513, Peonage, Slavery, and Trafficking in Drugs and Persons-Section 1581-1592, Racketeering-Section 1952; Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § et seq. (Federal RICO", and Florida's Racketeering Statute, Chapter 895 et seq. (Florida RICO"), as more fully set forth and 42 U.S. Code § 1985, Conspiracy to Interfere with civil rights.

## II.   <u>PARTIES, JURISDICTION AND VENUE</u>

7. Plaintiff, Grant is a citizen of Florida and resides in the Middle District of Florida;

8. Defendant Schlick, is a citizen of Florida, resides n the Middle District of Florida, an officer of Contractor Services 1, LLC with the Florida Division of Corporations and is being sued in her official and individual capacity;

9. Defendant Hardin, Jr. is a citizen of Florida, a Florida Bar attorney, resides

PAGE 7

in the Middle District of Florida and is being sued in his official and individual capacity;

10. Defendant, C. Allen is a citizen of Florida, resides in the Middle District of Florida and is being sued in her individual capacity;

11. Defendant, CS1 a corporation in the state of Florida, registered with the Florida Division of Corporations, doing business in the Middle District of Florida and is being sued in its official capacity;

12. Defendant, Fox is a citizen of Florida, a Florida Bar attorney, resides in the Middle District of Florida and is being sued in his official and individual capacity;

13. Defendant Carlton is a citizen of Florida, a Florida Bar attorney, resides in the Middle District of Florida and is being sued in his official and individual capacity;

PAGE 8

14. Defendant, DHC, is a corporation in the state of Florida, registered with the Florida Division of Corporations, doing business in the Middle District of Florida and is being sued in its official capacity;

15. Defendant Hall is citizen of Florida, a 12th circuit judge, resides in the Middle District of Florida and is being sued in his official and individual capacity;

16. Defendant Quartermaine is a citizen of Florida, a 12th circuit judge, resides in the Middle District of Florida and is being sued in her official and individual capacity;

17. Defendant Potter is a citizen of Florida, the elected DeSoto County Sheriff, resides in the Middle District of Florida and is being sued in his official and individual capacity;

18. Defendant Parker is a citizen of Florida, a retired 12th circuit judge,

PAGE 9

resides in the Middle District of Florida and is being sued in his individual capacity;

19. Defendant Hancock is a citizen of the state of Florida, a Florida Bar attorney, resides in the Middle District of Florida and is being sued in his official and individual capacity;

20. Defendant Wilson, is a citizen of Florida, resides in the Middle District of Florida and is being sued in her individual capacity;

21. Defendant Bonner is a citizen of Florida, the 12th circuit chief judge, resides in the Middle District of Florida and is being sued in her official and individual capacity;

22. Defendant Haworth, is a citizen of Florida, a 12th circuit judge, resides in the Middle District of Florida and is being sued in his official and individual capacity;

PAGE 10

23. Defendant Arend, is a citizen of Florida, a 12th circuit judge, resides in the Middle District of Florida and is being sued in his official and individual capacity;

24. Defendant Negley, is a citizen of Florida, an elected Supervisor of Elections for DeSoto County, resides in the Middle District of Florida, and is being sued in his official and individual capacity;

25. Defendant Ruff, is a citizen of the state of Florida, a Florida Bar attorney, practices law in the Middle District of Florida and is being sued in his official and individual capacity;

26. Defendant Savage, is a citizen of the state of Florida, former Florida Bar attorney, resides in the Middle District of Florida and is being sued in his individual capacity;

27. Defendant Seusy, is a citizen of the state of Florida, a Florida Bar attorney, resides in the Middle District of Florida and is being sued in his official and individual capacity;

28. Defendant Conflitti is a citizen of Florida, resides n the Middle District of Florida, an officer of Contractor Services 1, LLC with the Florida Division of Corporations and is being sued in his official and individual capacity;

29. Defendant Bennett, is a citizen of Florida, a retired 12th circuit judge, resides in the Middle District of Florida and is being sued in his individual capacity;

30. Defendant Shields is a citizen of Florida resides in the Middle District of Florida and is being sued in his individual capacity.

31. Defendant R. Allen is a citizen of Florida resides in the Middle District of Florida and is being sued in his individual capacity.

32. Defendant Guess is a citizen of Florida resides in the Middle District of Florida and is being sued in her individual capacity.

33. Defendant Stephen M. Walker is a citizen of Florida, a 12th circuit judge, resides in the Middle District of Florida and is being sued in his official and individual capacity;

34. Defendant Wright is a citizen of the state of Florida, a Florida Bar attorney, resides in the Middle District of Florida and is being sued in her official and individual capacity;

35. Vernon L. Keen is a citizen of Florida, former Sheriff of DeSoto County, resides in the Middle District of Florida and is being sued in his individual capacity;

36. Defendant Sica is a citizen for Florida, CEO of DeSoto Memorial Hospital, resides in the Middle District of Florida and is being sued in his individual capacity;

PAGE 13

37. The above Plaintiff and all the above Defendants are subject to the personal jurisdiction of the Court;

38. The Court has subject matter jurisdiction over this case pursuant to 18 U.S.C. § 1964 (c) and 18 U.S.C. § 1962;

39. Venue is proper in this district, pursuant to 28 U.S.C. § 1391 (b), as all Defendants either reside or do business in this district and events giving rise to Plaintiff's claims occurred in this district. Venue is also proper in this district pursuant to 18 U.S.C. § 1965 as all Defendants have conducted their affairs in the Middle District of Florida.

## THIRTY YEAR PATTERN

40. Plaintiff Grant chargers that a corrupt small town government in Arcadia, DeSoto County Florida has in essence, been transformed into a racketeer influenced and corrupt organized crime-enterprise, has turned criminal cases into a forum for theft of property and business interest, and that this corruption has further generated void judgments, civil and criminal.

PAGE 14

41. **NOTE:** The documents from this case are no longer in the DeSoto

County Courthouse. Plaintiff Grant has her copies in an undisclosed location

**IN THE INTEREST OF:**
**KEVIN DAUGHTREY,**
**CHRISTOPHER DAUGHTREY,**
**BENJAMIN DAUGHTREY,**
**MARIA DAUGHTREY**
**Case #1984-44-CJ**

42. Defendants: C. Allen, R. Allen, Parker

43. Plaintiff Grant's four children were removed from her custody by an

illegal Baker Act issued as a joke by Defendant R. Allen and Defendant

Parker. Plaintiff claimed ad still claims her children were taken because of

her religious beliefs.


44. Plaintiff Grant went to the press after her hired attorney could not help.

The Coalition for Religious Freedom in Washington D.D. heard this story,

sent a crew to Arcadia, filmed the details and aired it in a documentary on

national television on a Sunday evening 7:30 pm.


PAGE 15

45. The next morning Defendant Parker called Plaintiff's attorney to return her four children. They were removed from Plaintiff's custody and care for almost 6 months. Plaintiff Grant picked up her children up at an orphanage, called the Florida Baptist Children's Home in Lakeland. Defendants are both Baptists. Plaintiff at that time was Seventh Day Adventist.

46. The hearing arranged by Defendant Parker was not held in a courtroom, but in the courthouse law library. Plaintiff had her children taken and returned without one hearing or signing one document.

47. The 1st Amendment to the United States Constitution protects and guarantees freedom of religion.

48. At no time did Defendant C. Allen object to the actions of her husband but participated equally.

PAGE 16

49. **STATE OF FLORIDA v BENJAMIN DAUGHTREY**
**1997CF000382**
**1997CF000428**

50. Defendant: Parker,

51. Because of the trauma of 1984 Plaintiff's son Ben Daughtrey became so insecure that he would not spend one night away from home during his entire childhood.. He would not talk about the 1984 event his entire life until one day when turning 21 years, in a restaurant during a lightning storm he began suddenly to talk about 1984. His brothers, and sister were also shocked as he began speaking details, even we didn't recall, like the name of the case worker who hauled him out under his arm like a piece of luggage with Ben kicking and screaming.

52. Ben's trouble of this felony was case was published on the front page of the newspaper in the Arcadian. Defendant Parker presided over the case! Bens Due Process rights were violated as this RICO complaint will show as the DeSoto County Jail and Courthouse were racketeering back then as well.

PAGE 17

53. Ben is a responsible husband and father of two children, with a beautiful home in North Port and works in Sarasota. Despite his difficult childhood trauma he has, as an adult overcome it all and is well aware of the injustices he had to endure.

## 54. STATE OF FLORIDA v. JOHNNIE SMITH 2000-cf-430

55. Defendant: Parker

56. Defendant Parker was the presiding judge on this case and kept speaking Plaintiff's name, Nancy Grant during the trial of Johnnie Smith. Plaintiff Grant did not attend Johnnie's trial.

57. During this time Plaintiff was the "Jailer in Chief" the "CEO" of a political action committee registered with the Florida Department of Elections called J.A.I.L., the Judicial Accountability Initiative Law and Johnnie's mother was supportive.

58. Plaintiff Grants involvement, as well, was talking about Johnnie's case

on the local radio station regarding how long he was being held in jail without trial, over 2 years.

59. There were two young men with Johnnie and a woman at the time of the arrest. The woman was not arrested. The case is of a bank robbery that occurred in Arcadia. The FBI investigated but did not pursue for lack of evidence. The DeSoto County Sheriff's office went on to create evidence and conducted a mock trial in 2002.

60. The FBI visited Johnnie in prison about 1 yr. ago and informed him the woman at the time of the arrest had been murdered. Defendant Parker sentenced Johnnie to life in prison in violation of Florida Statute sentencing guidelines, Plaintiff Grant calls it vindictive sentencing. The FBI told Johnnie he shouldn't be in prison, its now going on 19 years. *See Plaintiff Grant's complaint to the Florida Supreme Court*

PAGE 19

*Case No SC05-2090 statement made to Plaintiff's son Kevin Daughtrey by Defendant Parker, 'bad things happen to those associated with your mother".*

61. Plaintiff Grant's 1st Amendment rights are violated in that <u>Plaintiff has the right to speak freely of injustices she sees without retaliation</u> having her name publicly slandered.

62. **DAVID P. CARLTON v MARK F. NEGLEY 2004CA000335**

63. Defendants: Carlton, Bennett,

64. Plaintiff Grant ran for county judge in 2004 after reading the U.S. Constitution that if the population of the county is less than 30,000 it was not required to be a member of the Florida Bar to be placed on a ballot.

65. Plaintiff collected her signatures and was put on the ballot as a candidate for county judge. Immediately after getting on the ballot the Supervisor of Elections, Mark Negley and Plaintiff Grant were sued by Defendant Carlton.

66. Due to Hurricane Charlie hitting Arcadia, August 13th, 2004 Plaintiff could not continue with this case. Defendant Bennett ordered Plaintiff to be removed from the ballot. Plaintiff demanded her right to due process, of a trial but all this was ignored.

67. Plaintiff Grant filed a complaint in the Middle District but the hurricane prevented her from pursuing the action and the complaint was dismissed without prejudice. Plaintiff claim was she should not have to be a member of the Florida Bar because when Florida entered the Union it had to guarantee it would NEVER prohibit the right of the citizens to hold public office or vote. Both of these promises have been broken. Defendant Carlton violated Plaintiffs right to due process as stated in the 5th and 14th Amendment to the U.S. Constitution.

68. NANCY DAUGHTREY (GRANT) v.
FLORDIA DEPARTMENT OF CHLDREN AND FAMILIES
SC05-2090; 2D05-4917

69. Defendants: C. Allen, R. Allen, Parker

PAGE 21

70. Plaintiff filed a Motion to Re-Open the case in the 1984 case 84-44-CJ because new evidence was found in the case documents where Defendant Parker (1. Admitted there had been no reason to take Plaintiff's children; (2. Defendant Parker contacted the case worker on Plaintiff case after her children were returned, "to create a reason to remove the children." It is documented that Defendant Parker was conspiring to have Plaintiff Grant's children taken again.

71. Plaintiff found this documentation because of the events that were transpiring involving Plaintiff's oldest son, Kevin Daughtrey. Once again, no due process rights were available to Plaintiff Grant as Defendant Parker continued on the bench violating Plaintiff's 5th and 14th Amendment to the U.S. Constitution rights.

72. **SHANNON DAUGHTREY v KEVIN DAUGHTREY 2005 DR 000611;**

73. **Defendants: Hall, Bonner**

73. A restraining order application was filed by Kevin Daughtrey's (now) ex-wife, Shannon. Kevin and Plaintiff Grant attended the hearing. Defendant Hall walked in the courtroom, being the presiding judge, and when he saw us he turned and walked out.

74. The hearing was cancelled and we had to leave. The case was later assigned to Defendant Bonner (Defendant Bonner and Defendant Carlton are cousins) but there was never a hearing.

75. Defendant Hall removed himself off Kevin's case. Plaintiff Grant in 2004 was temporarily on the ballot to run against Defendant Hall for county judge as explained above in Carlton v. Grant 2004-CA-335.

76. A conspiracy to defraud was operating in the 12th circuit court. Plaintiff's children were taken illegally and when returned were damaged. They recovered over many years with Plaintiff Grants motherly support.

PAGE 23

77. Now the officials of the court are moving to steal more of Kevin's inherited property by deceptive court functions controlled by officers of the court in violation of 18 U.S.C. § 371 – CONSPIRACY TO DEFRAUD THE UNITED STATES.


78. **SHANNON I. DAUGHTREY v KEVIN DAUGHTREY 2005DR214; 2D05-5768;**

79. Defendants: Sica, Parker

80. This is a divorce case with Defendant Parker presiding until asked to disqualify himself, which he did late in the case. Kevin Daughtrey hired an attorney but he wouldn't produce a Motion to Disqualify until Plaintiff Grant raised so much hell about it that he was forced to act. Kevin's motion to disqualify reason is due to the conflict between Plaintiff Grant and Defendant Parker about the 1984 issue. The Motion stated facts pertaining to this and Kevin signed onto it.

81. The fraud committed in this case by the 12th circuit is: The name, "Shannon" was forged/hand written next to Kevin Daughtrey's type written name on the year old mortgage agreement between him and Jim Walter Homes. Defendant Parker accepted this fraudulent document and proceeded with the case. The goal was to sell the property as quickly as possible, at that time having a price tag of $500,000.

82. Kevin's grandfather, Wilbur H. Grant gave Kevin 14.85 acres, which Kevin mortgaged and built a house. This fraud was being conducted while Kevin was in jail, arrested on false charges.

83. Also, a quit claim deed was offered using bribery to Kevin that he could see his three sons if he signed the quit claim deed. Due to Defendant Sica moving on this so fast an error was made in the description of the property.

PAGE 25

84. An emended quit claim deed was offered to Kevin to sign but he refused (still in jail on charges stemming from 1984) Defendant Parker ordered it a a scribers error.

85. Plaintiff Grant immediately filed a "Common Law Lien" to Prevent the sell of the property.

86. Defendant Sica then sued Plaintiff Grant, which is the next case. Again these corrupt court functions controlled by officers of the court stand in violation of 18 U.S.C. § 371 – CONSPIRACY TO DEFRAUD THE UNITED STATES

**87. SHANNON HOWARD f/k/a SHANNON DAUGHTREY
v. NANCY JO GRANT
2005-CA-442;**

88. Defendants: Parker, Sica

PAGE 26

89. Defendant Sica filed a Complaint to have the Common Law Lien Plaintiff filed removed. Defendant Parker was on the case. Plaintiff filed to disqualify Defendant Parker but it was denied and the hearing ensued to quash the Common Law Lien. Plaintiff filed an Appeal and Kevin Daughtrey was still in jail. Defendant Parker did not have jurisdiction over this hearing forhaving recused himself off previous cases involving Plaintiff Grant Violations of 18 U.S.C. § 371 – CONSPIRACY TO DEFRAUD THE UNITED STATES continue, but it gets worse.

90. **STATE OF FLORIDA**
**v. KEVIN E DAUGHTREY**
**2005-CV-370;**

91. Defendants: Hall, Parker, Sica

92. Kevin Daughtrey was the manager of a landscaping company making over $100,000 a year. He was suddenly arrested and charged with 5 counts of sexual battery.

PAGE 27

93. The accusation came from the 1984 issue and was slanted by Shannon, the ex-wife. During the period of time the housing market was high and the house and property were listed for $500,000. Shannon and her parents saw $$ signs and wanted his home and property sold.

94. Defendant Sica (who was handling the divorce) stated in his third filing of the divorce documents that he wasn't getting his fees till the house was sold, at the expense of Kevin's life.

95. Of the (5) five counts the State of Florida charged, Plaintiff Grant collected evidence proving Kevin was in Wyoming with his paternal father during three counts.

96. Kevin hired an attorney but he would not file the evidence Plaintiff Grant produced and suddenly quit the case. Plaintiff Grant filed the evidence and three of the counts came off, dismissed by the state attorney.

97. Some time went by and Plaintiff Grant didn't get the daily jail phone call from Kevin for three days. That is because Kevin was suddenly taken from

PAGE 27

the jail to the courthouse for a "secret" plea deal hearing before Defendant Hall. (a recused judge).It was late in the week and Kevin was told if he went to trial on Monday and found guilty he would get 40 years for each of the two counts but if he took the plea deal it would be (7) years. Kevin took the deal.

98. Kevin's attorney argued that because the dates of the offenses Kevin fell  under the  old guidelines making it possible he could be out of prison in 3 ½ years.

99. The Bailiffs were instructed prior to the hearing; if they see Plaintiff Grant come in… notify the court.

100. Once Kevin took the plea deal Count 2 was dropped leaving only 1 Count. That's when the dates were changed to make the charge stick. Kevin was charged as an adult because the statute of limitations expired for

PAGE 28

charging him at a juvenile. The period of time of the alleged offense dates had to be altered.

101. This hearing occurred close to the weekend and Kevin was told they would go to trial on Monday thus pressuring him to take the deal. When reviewing the case file no preparations were completed to go to trial on Monday or any time in the near future, it was all a hoax.

102. Plaintiff Grant then found that Defendant Parker (<u>a recused judge</u>) signed the Order sending Kevin to prison. This was brought to Parkers attention and Defendant Hall was assigned (<u>another recused judge</u>) so Kevin was sent to prison by disqualified judges.

103. It took over a year, Kevin studied law while in prison, filed pro se and after filing his paper work in Tallahassee was home in (9) days.

PAGE 29

104. Today he is an aircraft mechanic with ratings and a certified pilot. Kevin often states if he had not owned any property he would never been in jail.

105. Defendant Parker and Defendant Hall did not have jurisdiction over this case for having disqualified themselves in previous cases. They had to hold a secret hearing so Plaintiff Grant could not be present is Violations of 18 U.S.C. § 371 – CONSPIRACY TO DEFRAUD THE UNITED STATES

107. **NANCY GRANT V. JERRY HILL, RONALD NEADS, FELTON GARNER,** *DELMA ALLEN*
**2006-CA-664**

108. Defendants: R, Allen, Parker, Hall, Keen

109. This case stems from a mud bogging business Plaintiff son Chris Daughtrey tried to open. Simply put: Chris did all the necessary paperwork the county told him to do. Paid all the expenses to open this business and on opening morning the sheriff deputies showed up and told Chris if you open

you will be arrested.

110. Plaintiff sued the county commissioners, note that Delma Allen, then former clerk of court in 1984 was present laughing with his brother Defendant R. Allen the morning cops arrived at Plaintiff home and carried her out, putting her in a cruiser U.S.C. § 371 – CONSPIRACY TO DEFRAUD THE UNITED STATES;

111. **NANCY GRANT,**
**KEVIN DAUGHTREY v.**
**JUDGE JAMES S. PARKER, et al**
**2:07-cv-00651-UA-DNF;**

112. Defendants: Parker, Hall, Bennett, Haworth, Hall, Sica, Arend, Wright, Keen,

113. This federal case stems from locking up Kevin and stealing his property.

114. **STATE OF FLORIDA v. NANCY GRANT**
**2006CF000335**

115. Defendants: Parker, Arend, Wright, Keene,

PAGE 31

116. The notes below were written and have been stored in my computer since 2008:

117. Jury Tampering: An undisclosed juror came forward about what happened during jury deliberation, said they were all threatened and ordered to find me guilty or they were not leaving the room. The jurors were informed their family members could be hurt;

118. I had a Prosecution side only trial;

3. Suspending driver's license not included in statutory punishment for UPL, lost license for 6 years;

119. Court acted as a legislative body creating law using the special jury instructions created just for my case. For instance, "It is UPL to file a paper with the clerk for another person";

120. Excessive bond of $50,000; I paid $5,000 to bond out;

121. Statement in Probation Orders for a lien of $33,600 to be placed on my property. The $33,600 had to be paid in full before my driver's license could be reinstated. It was paid in 6 years. I had to complete half of my 15 years probation;

122. Defendant Arend subpoenaed 250 people for a jury trial three times. First one I wasn't notified, second one I was ready for trial and they cancelled it, third one was when they forced a friend of mine, an attorney to be the trial lawyer. He wasn't an appointed PD. So he was never paid to represent me.

PAGE 32

123. Called passing out Jury Handbook "practicing law" in writing by the investigator of the Sheriff's dept.

124. Florida Supreme Court uses the term "Exclusive" when referring to Florida Bar on UPL.

125. The Jury Instructions are created from Florida Bar civil cases when I was charged criminally.

126. No victims. During the selection of jury members many of them walked out when they heard there was no victim and could they still accept to be a jury member.

127. . F.S. 454.23 penalty is not to exceed $5,000. I was fined $33,600. The clerk of court had not paid into the Clerk of Court trust fund, $33,800, so the excessive fine was an attempt to get it from me. The judge wanted me to pay the $33,600 before the end of the year, which was several months away.

128. Judge ordered me to get signatures from three banks that I could not get a loan for $33,600. I explained my income did not allow me to borrow that much called debt/income ratio.

129. Complete denial of pro se rights under threat of imprisonment if I filed pro se on anything except as a Defendant. Ordered as part of my probation.

130. First appearance was before Judge Parker. He told me as condition of my bond I was not allowed to talk to any inmates or any inmate family members about anything going on at the jail or courthouse.

132. Had to deactivate the Florida Pro se Bar I formed with the Florida Division of Corporations: *NAACP v. Button*, 371 U.S. 415*); United Mineworkers of America v. Gibbs*, 383 U.S.715; *and Johnson v. Avery*, 89 S. Ct. 747 (1969)

PAGE 33

**Members of groups who are competent non-lawyers can assist other members of the group achieve the goals of the group in court without being charged with "unauthorized practice of law."**

133. Ordered as part of my probation, I could not write to prisoners in the state of Florida or Florida Civil Commitment Center.

134. The State created a hostile witness Kim Wilson, who works in the clerk's office, she is still there. She said I called a prisoner, "my client", which is a lie. She was named in my probation orders.

135. Moved the jury deliberation to the County Commissioner's building next door to the court house.

136.. When I was in the DeSoto County Jail:

137.. Judge Parker kept me in booking in the cell for 3 months, directly in front of the audio visual so could look directly into my cell and see me in there. It was during this time I saw an officer come prancing in holding a bag of cocaine in one hand and a huge wad of bills in the other hand. A few of the officers suddenly made gestures pointing to me for him to quit displaying his wares;

138. The prosecuting attorney went to Johnnie Smiths mothers home badgering her at her door, they had to get in their car and leave to get away.

139. The prosecuting attorney ordered Deposition to be done in Wachula then arrived there with no court reporter. After my trial he was told to retire or he'd be fired. He left the country. He had been an attorney for traffic court prior to my trial.

140. I was not allowed to have one witness for my Defense. If my attorney tried, the jury was moved out of the courtroom.

PAGE 34

141. I was able to listen to the women inmates talking about being set up by the sheriff officers with drugs then arrested. Also, about forced plea deals, keeping inmates in jail for over 3 years incognito;

142. Defendant Wright is a "bar fly" hanging around the courthouse collecting clients, then leaving inmates incognito while she collects $'s. She set up a phony office at a garage space rental facility placing in folding chairs, a folding table and a phone that wasn't connected to make it appear she had an office, so service of process to her "office" could be done.

## 143. GREENTREE SERVICING v KEVIN DAUGHTREY 2012-CA-462;

144. Defendant: Hall

145.This is the foreclosure on the house that was stolen from Kevin because he was illegally imprisoned a recused judge on the bench.

## 146. GREENTREE SERVICING V. KEVIN DAUGHTREY 2014-CA-142

147. Defendants: Savage, Seusy, Quartermaine, Shields, Hall

PAGE 35

148. This case was just heard by Quartermaine, on August 28, 2019, no attorney was present for Green Tree. Savage (the attorney of record) is no longer able to practice law.

149. Green Tree Servicing no longer is participating in their case since they gave the property to another company C. Services but the 12th circuit moved forward as if the case is still active protecting Shields, the drug dealer.

150. **GREENTREE SERVICING v. NANCY GRANT 2016CA000344; 2D17-2698;**

151. Defendants: Walker, Seusy, Bonner, Ditech, Ruff

152. Plaintiff arranged to be sued by Green Tree so she could get into the record how Kevin had his inheritance stolen. Bonner, Walker and Seusy are conspiring together to steal more land from Plaintiff's family.

153. A hearing is scheduled for today September 17, 2019 in Venice. Green Tree Servicing does not own the property. Ditech gave the property for $10

to Contractor Services before the appeal was final.

154. Ditech voluntarily abandoned the case when they were sued for fraud by the United States Government and lost. Ditech has to pay millions in fines and filed bankruptcy.

155. Prior to this hearing today Seusy (an appointed receiver by Bonner) made an attempted by Motion to steal all the cattle, horses and ponies on Plaintiff property. Defendant Bonner moved the case to Venice to hide what is going on.

156. **NANCY GRANT v CHARLOTTE ALLEN AND RONNIE D. ALLEN 2019-CA-189;**

157. Defendants: Bonner, Walker, C.Allen, R.Allen, Hancock, Hardin, Fox,

158. This case is about the 1984 event, which keeps coming up because of the battle over the house. Defendant Bonner moved the case to Venice to so what is going on isn't discussed in the court where the offenses occurred.

PAGE 37

160. **CHARLOTTE ALLEN v. NANCY GRANT**
**2019-CA-098**

161. Defendants: Fox, Hardin, C. Allen

162. Defendant C. Allen sued Plaintiff Grant for attorney fees over Plaintiff bringing a suit again C. Allen because of 1984.


163. **STATE OF FLORIDA v. NANCY GRANT**
**2019-CF-221**

164. Defendants: Potter, Shields,

165. Plaintiff was arrested in May, 2019 for grand theft auto. Plaintiff would not condone the sheriff deputies trespassing on her property thru an illegal driveway, which was a cut fence.


166. A truck was stuck in a mud hole due to the fact that it was being used to steal calves. Drug dealers are entering at night and leaving quickly to the house that was stolen from Kevin. It has been used as a drug house with sheriff protection for months.


PAGE 38

167. The state attorney declined to prosecute over this arrest and the case was closed. Plaintiff holds Potter responsible for this false arrest. Shields made the complaint.

## 168. NANCY GRANT V. ASHELY SCHLICK manger of CONTRACTOR SERVICES 1, LLC and RICHARD CONFLITTI 2019-CA-099

169. Defendants: Schlick, C. Services, Conflitti, Walker, Bonner,

170. Plaintiff filed this civil lawsuit March 8, 2019 in the 12th circuit.

Bonner altered the Defendant list leaving off Contractor Services and Ashley Schlich then moved the case to Venice.

## 171. RICHARD CONFLITTI v. GINA LABRUNO 19-cc-078

172. Defendants: Shields, Conflitti, Potter, Guess

173. This case is about the abduction of Gina Labruno by Guess, Shields and Conflitti and Potter.

PAGE 39

175. **FLORIDA STATUTE VIOLATION ON ELECTION FRAUD**

176. Defendants: Negley,

177. Plaintiff wrote to FDOE, Florida Division of Elections concerning election fraud.
Exhibt 1

178. The FDOE responded.
Exhibit 2

179. A citizen in Arcadia submitted an Affidavit about election fraud in 2016.
Exhibit 3

**WHEREFORE,**

Plaintiff is asking the Court to decide what actions to take regarding the

above information.

Respectfully submitted,

September 17, 2019

Nancy Grant
803 E. Magnolia St.
Arcadia, FL 34266

PAGE 40

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing will be served by process server to the following Defendants:

Ashley Schlick, POB 494163, Pt. Charlotte, FL 33952;

Benjamin W. Hardin Jr., 1905 Bartow Rd., Lakeland, FL 33801;

Contractor Services 1, LLC, POB 494163, Pt. Charlotte, FL 33952;

Charlotte L. Allen, 10057 NW Lily Cty. Line St., Ona, FL 33862;

Daniel A. Fox, 1905 Bartow Rd., Lakeland, FL 33801;

David P. Carlton, 12687 SW Cty. Rd. 769, Lake Suzy, FL 34269

Ditech Holding Corp., 1000 Bayport Dr. S. 1100, Tampa, FL 33607;

Don T. Hall, 115 E. Oak St. Suite 201, Arcadia, FL 34266;

Erica Quartermaine, 4000 S. Tamiami Tr. Sarasota, FL 34293;

James F. Potter; 208 E. Cypress St., Arcadia, FL 34266;

James S. Parker; P.O Box 628, Arcadia, FL 34265 or Brewer/4GF;

Kim Wilson Cheraz 115 E. Oak St., Arcadia, FL 34266;

Kimberly Carlton Bonner, 2002 Ringling Blvd., Sarasota, FL 34237;

PAGE 41

Lee E. Haworth, 2002 Ringling Blvd. Sarasota, FL 34237;

Mark Negley, 201 E. Oak St., #104, Arcadia, FL 34266;

Paul B. Seusy, 7 N. Roberts Ave., Arcadia, FL 34266;

Richard D. Conflitti, 3440 Depew Ave. Pt. Charlotte, FL 33952;

Robert B. Bennett, Jr. P.O. Box1927. Nokomis, FL 34274;

Rodney Shields; 4673 SE Wilbur Dr., Arcadia, FL 34266;

Ronnie Dean Allen, 10057 NW Lily Cty. Line St., Ona, FL 33862;

Sherry Straub-Guess; 4673 SE Wilbur Dr., Arcadia, FL 34266;

Stephen M. Walker, 4000 S Tamiami Tr., Venice, FL 34293;

Vernon L. Keen, 208 E. Cypress St., Arcadia, FL 34266

September 17, 2019.

Nancy Grant

803 E. Magnolia St
Arcadia. Fla. 34266

Page 42